IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| GLOBAL GROUND AUTOMATION, INC., | § § | |
| Plaintiff, | § | C.A. No. 6:15-cv-00002-RWS-JDL |
| v. | § | |
| ORISSA HOLDINGS, LLC, GROUND MANAGEMENT HOLDINGS, LLC, individually and dba GROUNDSPAN, and GROUNDWIDGETS, | § § § § | |
| Defendants. | § | |

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendants have carefully reviewed the Report and Recommendation of United States Magistrate Judge (Docket No. 62) filed on August 12, 2015 (the "Report"). Defendants agree with the Report that Plaintiff Global Ground Automation, Inc. ("GGA") failed to discharge its burden of proving contempt by clear and convincing evidence under the TiVo standard.[1] However, Defendants respectfully object to the Report's legal conclusion that GGA "has met its burden to show that the GroundSpan system is not more than colorably different from the infringing GroundRez system" and further object to the factual findings upon which this legal conclusion is based. (Report, p. 12)

**GGA Has Not Met Its Burden To Show That The Groundspan System Is Not More Than Colorably Different From The 2010 Infringing System**

Defendants agree with the Report that TiVo instructs that "the colorable differences analysis must focus 'on those aspects of the accused product that were previously alleged to be, and were a basis for, the

---

[1] Since the Report's findings rendered Defendants objections under Rule 65 as moot, Defendants reserve their right to renew their objections under Fed. R. Civ. P. 65 (d) in the event the Report's ultimate conclusion in favor of the Defendants is reversed or otherwise revised against Defendants.

1

prior finding of infringement, and the modified features of the newly accused product.' Specifically, the Court must focus on 'those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims.'" Report, p. 8-9 (citing the TiVo Standard). However, Defendants respectfully disagree with the Report's legal conclusion that the infringing GroundRez Switch is included in the GroundSpan System or that the GroundSpan System retains infringing features of the GroundRez System because the Report did not include an analysis of all of the contended and proved features of the GroundRez Switch with the GroundSpan System or explain why a finding of a small subset of the infringing features sufficiently supports such conclusion.

In the present case, all of the elements or features of the adjudged infringing system that the patentee previously contended and proved, and which satisfy specific limitations of the asserted claims are explicitly listed in the Claim Chart of the 2010 Declaration. Ex. 22 ("Claim Chart"). Under the TiVo Standard, each of the contended and proved features of the GroundRez Switch must be analyzed and identified in the GroundSpan System since its source code was never contended, and proved, as part of the infringing system. GGA failed to do so. Rather, GGA's colorable difference analysis was based on the source code of the GroundRez System that was neither contended nor proved in the prior infringement case. The explicit language of the TiVo Standard prohibits GGA from circumventing the colorable difference analysis by conveniently assuming that the contended, and proved, features are somehow embedded in the GroundRez source code so that GGA is only required to compare the GroundRez source code with the GroundSpan source code.

### A. Dr. Nettles' Conclusory and/or Inconsistent Statements Do Not Support a Finding that the GroundSpan System Includes the Infringing GroundRez Switch

The Report credited Dr. Nettles' conclusory statement that the GroundRez Switch is in the GroundSpan System. Report, p. 11-12; Trial Tr. at 148:5-18. But the basis of Dr. Nettles' conclusory

statement cannot be ascertained as he already admitted that he did not or could not identify the GroundRez Switch in the GroundSpan source code:

> THE COURT:···And what is that switch?
>
> A.· ·Well, it's -- I mean, **the exact piece of code was never identified here**, so the **functionality of the switch in the initial declaration was described in terms of the interfaces** that were used.··And that's what I -- that's part of what I focused on in my analysis. But I also analyzed the code base in general and so -- **I mean, I didn't pinpoint in the code exactly the thing that acts as a switch because  that's -- that's not -- that's not pinpointed here.** There was no way for me to compare what was in the old code to the new code based on this for a switch.··I had to look at the features that I actually understood.

(emphasis added.) Trial Tr. 147:13-25.

Thus, Dr. Nettles conceded that he could not "pinpoint in the code exactly the thing that acts as a switch." He further stated that he could not "compare what was in the old code to the new code based on this for a switch." The reason is simple. The 2010 Declaration did not cite or include any source code for the GroundRez Switch. Apparently, there was no source code for the infringing GroundRez Switch.

Dr. Nettles also represented that "the functionality of the switch in the initial declaration was described in terms of the interfaces that were used." But the functionality of the GroundRez Switch is explicitly described in the Claim Chart. Dr. Nettles did not explain what interfaces he was referring to.

If Dr. Nettles testified that the functionality of the GroundRez Switch is not in the GroundSpan source code, then how could the GroundSpan System act as a switch or otherwise use any interfaces that would cause it to act as a switch? Dr. Nettles failed to provide any technical explanation or facts in support of his statement. Accordingly, Dr. Nettles' conclusory statement that the GroundRez Switch is in the GroundSpan System should not be accorded any evidentiary weight.

The Report cited Dr. Nettles' testimony in support of the finding that the GroundRez APIs are still in active use in the GroundSpan System. Trial Tr. 102:10-12 ("A.··Yes, sir.··It seems that the APIs that were the basis for the finding are still in active use in the system."). But this testimony cannot be supported by his review of the 2010 Declaration and his comparison of different versions of the GroundSpan source code

3

because these documents do not include the GroundSpan APIs (Ex. 23). Trial Tr. 101:8-25; see also Trial Tr. 97:12-14 ("GGA Counsel:· ·And are Exhibits 20 through 26 part of what you considered in reaching your opinion here today? A.· ·Yes, sir, they are."). Importantly, he did not compare GroundSpan APIs (Ex. 16) with GroundRez APIs (Ex. 23) to determine if comparable or corresponding APIs of the infringing features of the GroundRez Switch are included in the GroundSpan System. Trial Tr. 150:6-19. In fact, he testified that these API documents are "apples" and "oranges" without providing a technical explanation as to why they are so drastically different and should not be compared. Trial Tr. 117:4-16. The APIs are important interfaces for comparison in view of the extensive citation of GroundRez APIs in the Claim Chart. Thus, Dr. Nettles' statement "that the APIs that were the basis for the finding are still in active use in the system" is factually unsupported and conclusory, and is thus entitled to no evidentiary weight.

The Report also cited Dr. Nettles' testimony on "TripStatus" in the Claim Chart of the 2010 Declaration as evidence that "TripStatus" defined in the Claim Chart is in active use in the GroundSpan System. Trial Tr. 102:13-18. But Dr. Nettles' statement on "TripStatus" is also conclusory because he failed to demonstrate how the GroundSpan source code could effectuate the infringing feature via "TripStatus" in the manner described in the Claim Chart. Dr. Nettles also failed to explain whether the "TripStatus" API described in the GroundRez API (Ex. 23) is the same as the "TripStatus" in the GroundSpan source code (which is not an API and which may operate differently from "TripStatus" API).

According to Dr. Nettles, APIs are SOAP interfaces which allow communications with a system over the Internet using IP, as shown in the below testimony:

> **Defendants Counsel:**··So, how does the GroundSpan vendor API communicate back with the GroundSpan system?
>
> A.· ·I mean, it uses the computer network and probably certainly IP, but probably TCP.··These are SOAP interfaces, so it follows those protocols.··I'm not sure I know what you're asking me.

Tr. 152:12-17.

4

It is a leap of logic to conclude that a GroundRez API used by a vendor to communicate with the GroundRez system may be found in the source code of a system which does not use API to communicate with itself. Without a reliable technical explanation, Dr. Nettles' comparison of an API (which is a SOAP interface) and a source code is technically flawed. Common sense dictates that Dr. Nettles should have compared the contended and proved GroundRez API document with the GroundSpan API document. But he stated that these documents are "apples" and "oranges" thereby supporting a conclusion that the GroundSpan System is more than colorably different from the infringing GroundRez Switch.

In addition, the Report cited Dr. Nettles' testimony in support of the finding that the GroundSpan system retains the functionality demonstrated by the screenshot in Attachment D to the 2010 Declaration. Report, at 12; Trial Tr. at 109:9-111:4 Assuming, *arguendo*, that the infringing "TripStatus" and the functionality demonstrated by the screenshot in Attachment D to the 2010 Declaration are in active use in the GroundSpan System, these functions appear only in the last three features of the GroundRez Switch listed in Claim 11 of the Claim Chart (i.e. those contended and proved features of GroundRez Switch which (1) monitor and update the Booking System; (2) receive a confirmation that the vendor has completed performance of the transportation request; and (3) notify the Booking System via the GroundRez GDS and the GroundRez CBT), but not in at least six of the other GroundRez Switch features listed for Claim 11 in the Claim Chart. A reasonable conclusion is that the GroundSpan System is more than colorably different from the GroundRez Switch because it does not include at least six of the GroundRez Switch features listed for Claim 11 in the Claim Chart. The Report does not explain why a finding of a small subset of infringing features supports the conclusion that the GroundSpan System is not more than colorably different from the 2010 Infringing System.

Furthermore, Dr. Nettles' testimonies on the basic operation of the GroundRez Switch were contradictory and/or inconsistent.

5

According to the Claim Chart, "[t]he GroundRez Switch routes a transportation request *between the Booking System and a ground transportation vendor*, which includes a reservation dispatching system (i.e., back office), that most often have terminals to control transportation reservations in various locations." (emphasis added.) Ex. 22, Claim Chart, p. 1. However, in his effort to explain the 2010 Infringing System to the Court, Dr. Nettles stated that the GroundRez Switch routes requests *between various transportation providers (i.e., vendors)*. Trial Tr. at 148:5-18 (A. "GroundRez servers, they're going to take—they're going to take requests in from these booking agencies and they're going to **switch them between various transportation providers**, and that server software, in mediating that choice, is acting as a switch as described in the patent.") (emphasis added).

But this testimony is contradicted by his earlier direct testimony:

> **GGA Counsel:** And, first of all, do you believe that the system that is described in the 2010 Papakonstantinou declaration is a system that involves **vendor-to-vendor** *communications*?
>
> **A**. No, sir. My understanding is that the system that was found to infringe involves **booking systems to vendor communications**.

(emphasis added.) Trial Tr. 112: 8-14.

Thus, in this earlier testimony, in response to GGA Counsel, Dr. Nettles rejected the notion that the 2010 Infringing System involves vendor-to-vendor communications. Rather, according to Dr. Nettles, the 2010 infringing System involves "booking systems to vendor communications." Yet, in his later testimony, Dr. Nettles represented to the Court that the GroundRez Switch of the 2010 Infringing System switches between various vendors. Trial Tr. at 148:5-18. This distinction is important for claim construction.

Dr. Nettles must provide a reasonable explanation as to why he chose one definition over another in light of his contradictory and/or inconsistent statements. Dr. Nettles did not provide such explanation.

Accordingly, in light of Dr. Nettles' conflicting and/or inconsistent conclusory statements, the Report improperly accorded evidentiary weight to Dr. Nettles' testimony on the GroundRez Switch. Moreover, under the TiVo Standard, GGA must compare each of these GroundRez features with any corresponding

6

features in the GroundSpan System. GGA failed to do so, and this burden cannot be satisfied by conclusory and/or inconsistent statements of Dr. Nettles.

### B. Mr. Patel's Testimony Does Not Demonstrate that the GroundSpan System Includes Features of the GroundRez System that Formed the Basis of the Infringement Finding

Mr. Patel testified that he did not believe the GroundRez software infringed the claims of the patent-in-suit but nonetheless made further changes to the GroundRez software. Trial Tr. at 64:8-65:1; 69:18-25; 70:1-7. The Report, however, cited the testimony as "strong circumstantial evidence that the features of the GroundRez system that formed the basis of the infringement finding are still present in the GroundSpan system."

Defendants respectfully disagree with this finding. Assuming, *arguendo*, Mr. Patel's testimony may be strong circumstantial evidence that the GroundSpan source code retained all of the original features of the GroundRez software, there is no evidence that the original features of the GroundRez software were the basis of the infringement finding. Indeed, the Claim Chart of the 2010 Declaration, which was the basis of the 2010 infringement finding, did not mention or cite any portion of the GroundRez software as infringing any of the limitations of the asserted claims of the patent-in-suit. See Ex. 22. Rather, GroundRez APIs were cited in the Claim Chart. But according to Dr. Nettles, APIs were "SOAP interfaces," not the source code of a system. Trial Tr. 152:12-17. Neither did Dr. Nettles testify that he compared the GroundRez software with the features of the infringing GroundRez Switch of the Claim Chart in order to conclude that the GroundRez software includes the infringing GroundRez Switch. Thus, the Report's finding that "the features of the GroundRez system that formed the basis of the infringement finding are still present in the GroundSpan system" is not supported by Mr. Patel's testimony or any evidence in the record.

Furthermore, there is no evidence in the record showing that the GroundRez Switch described in the Claim Chart was ever built or incorporated by the GroundRez software. Dr. Nettles testified that he reviewed the GroundSpan source code repository and determined that programmers have been "working

7

on the code pretty much steadily … from about 2007 or 2008 until recently … with no gaps." Trial Tr. 100:21-25.  But the GroundScope Commercial Proposal disclosing a "switch" (Ex. 25, Attachment C to the 2010 Declaration) was dated July 25, 2006.  Since the source code is dated after the GroundScope Commercial Proposal, it cannot be assumed that the infringing "switch" was ever built or somehow incorporated by the GroundRez software.  GGA fails to provide or point to any evidence in support thereof.

Thus, even if the GroundSpan source code retained features of the GroundRez software, there is no evidence in the record showing that the GroundRez software itself includes the features of the infringing switch described in the Claim Chart.  In fact, Dr. Nettles admitted that he did not or could not identify the infringing GroundRez Switch in the source code.  Trial Tr. 147:13-25.

**Conclusion**

Defendants respectfully submit that the Report's colorable differences analysis under the TiVo Standard improperly rested on conclusory, contradictory and/or inconsistent statements of Dr. Nettles and factually unsupported inference of Dr. Patel's testimony.  Accordingly, Defendants respectfully urge that the factual findings and legal conclusions under the colorable differences analysis of the Report be revised to reflect that GGA has failed to prove by clear and convincing evidence that the GroundSpan System is not more than colorably different from the 2010 Infringing System.

Dated: September 22, 2015

Respectfully submitted,
/s/ Chi Eng
Chi Eng
New Jersey Bar No. 0055961 (admitted EDTX)
chi@englawfirm.com
ENG LAW FIRM
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: 646.770.2347
Facsimile: 646.568.7231
***Counsel for Orissa Holdings, LLC, et al.***

**Certificate of Service**

The undersigned certifies that the foregoing document was filed electronically via the Court's CM/ECF system in compliance with Local Rule CV-5(a) on <u>    September 22, 2015        </u>. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email.

/s/Chi Eng
Chi Eng
